47 So.2d 77 (1950)
BUSH
v.
BOOKTER.
No. 3266.
Court of Appeal of Louisiana, First Circuit.
June 29, 1950.
*78 Jack P. F. Gremillion, Baton Rouge, W. A. Hunter, Baton Rouge, for appellant.
Fred G. Benton, George Mathews, Edward Donald Moseley, all of Baton Rouge, for appellee.
FRUGE, Judge ad hoc.
This is a damage suit by Mrs. Lorene Bush against Lena Bookter, doing business as Lena Bookter Beauty Salon. She seeks damages in the sum of $20,000 for physical pain, humiliation, mental anguish, both present and future, as well as permanent damage to her hair and her nervous system.
The substance of the plaintiff's allegations and testimony with reference to this complaint are these: That on the 29th day of April, 1948, she went to the defendant's beauty salon for the purpose of getting her weekly shampoo and manicure; that while there, defendant's attendant, a Miss June Picou, suggested to her that she be allowed to apply a permanent rinse to her hair for the purpose of bringing out the highlights therein; that she assented upon being assured that no damage or change of color would result from such an application. Pursuant to Miss Picou's suggestion the permanent rinse solution was applied and left thereon for 25 or 30 minutes while Miss Picou left the room and attended other customers; that when Miss Picou returned she found that the solution which had been applied had turned petitioner's hair from a shade of auburn brown to a blue-black color; that, thereupon, she applied a chemical dye remover to plaintiff's hair for the purpose of removing this rinse solution and this ugly blue-black color and restoring plaintiff's hair to its natural shade of auburn brown. Petitioner further alleged and testified that the chemical dye remover as applied by Miss Picou burned her scalp and caused her to suffer considerable pain and that when her hair had been dried, instead of being returned to its natural shade of auburn brown, it was a hideous and atrocious bluish-black color.
Plaintiff also contended that this hideous and atrocious bluish-black color persisted in her hair for approximately two months when it began to turn an ugly auburn or reddish color, and that after a time it began to turn gray and that at the present time she has a considerable amount of gray hair, all resulting from either the application of the rinse or the application of the dye remover.
The defense to the allegations of plaintiff's petition are, in effect, a general denial of any damage to plaintiff's hair or of any negligence on the part of defendant or its agents or employees.
The lower court rendered judgment in favor of defendant, rejecting plaintiff's demands and from this judgment plaintiff has perfected this appeal.
Plaintiff alleges that the doctrine of res ipsa loquitur is applicable to the claim against the defendant and in the alternative she pleads the following acts of negligence which were the proximate cause of the alleged damages and injuries sustained by her:
a. That defendant's employee and agent was negligent in leaving petitioner for a period of approximately 30 minutes after putting the chemical permanent rinse solution on petitioner's hair;
b. That defendant's agents and employees were negligent in applying the chemical dye remover solution to petitioner's hair after it had turned blue black as the result of the permanent rinse solution having been left on her hair over too long a period of time; and,
c. That defendant's agents and employees were guilty of negligence on petitioner's subsequent trips to defendant's beauty salon when they cut petitioner's hair excessively short, causing her hair to have several different shades of color.
In pleading the doctrine of res ipsa loquitur as an application to the case at bar, the plaintiff cited the following cases: Lanza v. Metcalf, La.App., 25 So.2d 453, Mixon v. Brechtel, La.App., 174 So. 283, Cooper v. The Powder Puff, Inc., La.App., 184 So. 593, Cassidy v. Beauty Studio, Inc., La. App., 144 So. 517.
*79 The lower court concluded that the doctrine of res ipsa loquitur was not applicable to the case reasoning that the cases cited by plaintiff were all cases where a patron of a beauty salon suffered injuries from the use of some mechanical device while undergoing beauty treatment and thus was different from the case at bar. The lower court further reasoned that the doctrine had no application to the facts of the case at bar because the plaintiff knew or had every reason to know the result of any dye that might be placed upon her hair by the defendant, and as well as the defendant herself would know.
The doctrine of res ipsa loquitur is a rule of evidence in those cases where the plaintiff cannot be expected to have any information as to the cause of the accident, whereas, the defendant, on the contrary, is assumed to be fully informed on the subject, and where the accident is of a kind which ordinarily does not occur when due care has been exercised. The rule of evidence is that the accident speaks for itself and that a presumption of negligence arises from the accident itself. In such cases the plaintiff need not allege the particular acts of negligence which caused the alleged injury, but the burden is on the defendant to show absence of negligence. The doctrine is an exception from the general rule that the plaintiff who claims damages must allege and prove the facts necessary to establish the negligence of a defendant. See Gerald v. Standard Oil Co. of La., 204 La. 690, 16 So.2d 233, 234; Plunkett v. United Electrical Service, 214 La. 145, 36 So.2d 704, 705.
We think that the lower court erred in not finding that the doctrine of res ipsa loquitur was applicable to this case.
In the case of Mixon v. Brechtel, La.App., 174 So. 283, 284, the Court stated: "A person who undertakes to hold themselves out to the world as skilled in any art, trade or profession and have people put themselves or their cases or belongings in their charge, are perfectly and absolutely justified in relying on the skill and art and science that such a person holds himself out to have in the exercise of such a trade, profession or art and a person so doing is primarily liable for any damage that occurs."
It is true, as stated by the lower court, that in the cases relied upon by plaintiff, the patron had suffered injuries from the use of some mechanical device, that is to say, in each of the cases the operator of the beauty salon had placed the plaintiff's hair underneath the drier or other mechanical device and as a result thereof the patron suffered burns to her scalp or injury to her hair.
We are of the opinion that the doctrine should also apply where dyes or other medicated treatments are used in the hair of the patron to the same extent as in those cases where mechanical devices are used. The patron coming into the beauty shop or salon relies upon the skill and knowledge of the operator who is issuing the beauty treatments to her.
However, the application of the doctrine of res ipsa loquitur does not in itself impose liability upon the defendant. The application of the doctrine merely shifts the burden of proof and imposes upon the defendant the burden of showing that he or she was free from negligence. The sole question remaining then being whether or not the defendant has sustained this burden of showing that she was free from negligence.
The evidence reveals that the plaintiff is 34 years old, weighing 98 pounds and the mother of three children. She became a regular patron of the defendant's beauty salon in December, 1947. Thereafter, she went to defendant's beauty salon weekly and she received various treatments, such as shampoos, sets, eyelash dyes and manicures. When plaintiff first came to defendant's shop she began to get, in addition to her regular treatments, color rinses to her hair. These rinses brightened up the plaintiff's hair but afforded only temporary relief. On January 26, 1948, an application called Kolor-treet was applied to plaintiff's hair, the purpose of which was to give a more lasting effect to the treatments. The results were good and no complaints were made about the treatment.
*80 On April 29, 1948, the date on which the alleged accident occurred, a second application of Kolor-treet was made. The evidence reveals that plaintiff, on this occasion indicated a desire to have her hair a little darker and there was no difference between the method used in this application and the first application except that the rinse was permitted to remain a few minutes longer in order to make her hair somewhat darker. After this application plaintiff's hair was darker than she desired, so an application of pure castile soap and peroxide to lighten it to the desired shade was made. The plaintiff testified that she thought the beauty operator, Miss Picou, had used some chemical to lighten her hair and that at the time of the application of the alleged chemical she experienced a burning of her scalp. However, her testimony is contradicted by Miss Picou, the beauty operator who administered the treatment, who testified that the plaintiff made no complaint and was completely satisfied with the results of the treatment which was given on April 29, 1948, and that as a matter of fact plaintiff's husband had stated thereafter that her hair was prettier than it had ever been before. Furthermore, Miss June Picou's testimony was corroborated by the testimony of Mary Cannon, also an employee of defendant, who testified that she noticed very little change in plaintiff's hair, the only change being that it was slightly darker than it had been before. Mrs. Jetta Foto, a customer of the defendant and friend of the plaintiff, also testified that she had seen plaintiff on many occasions since the date the alleged accident had happened and she had never noticed anything unusual or out of the ordinary about plaintiff's hair. Mrs. Foto was, at the time this application was made to plaintiff's hair, occupying the booth next to that occupied by plaintiff. Her testimony is to the effect that she heard nothing unusual in the next booth which contradicts plaintiff's testimony to the effect that Miss Picou exclaimed after the application of the treatment, "My God, what have I done to your hair!"
The evidence discloses further that the plaintiff continued to patronize the defendant's beauty salon regularly after the alleged accident. She did not stop patronizing the defendant's beauty salon until the latter part of October, 1948, and during this time made no complaint about the treatment which was given to her on April 29, 1948. It is significant that when visiting defendant's beauty salon she always received her treatments from Miss Picou, who was alleged to have carelessly and negligently administered the treatment at the April 29th appointment.
The evidence further indicates that Kolor-treet is a popular and much used semipermanent rinse and there is no suggestion that as a product it is defective.
Plaintiff contended further that Miss Picou, the beauty operator, failed to follow the instructions in applying the Kolor-treet to plaintiff's hair. A study of these instructions leads this Court to believe that there was a substantial compliance with the instructions and that any variance which was shown was such that it would not contribute to the alleged damages which plaintiff claims to have suffered. This was very emphatically shown by one of the expert witnesses called by the defendant, who testified as follows:
"Q. I think the best approach is to ask you some hypothetical questions. The plaintiff in this case contendsand I am making this a part of my hypothetical questionthat on April 29, 1948, she visited the beauty shop, the Lena Bookter Beauty Salon, and at that time she received an application of what is generally known as Kolor-treet. If it is shown in this case that she did so receive an application of Kolor-treet, which was applied by the operator by rubbing it all through the hair evenly for several minutes, and was then permitted to remain without any additional rubbing for a period of twenty minutes, and if it is further shown that following the expiration of that twenty-minute period the patron who was receiving that treatment complained that her hair was darker than she wanted it to be, and thereupon a shampoo was applied for several minutes, consisting of Opal Castile soap and a super-peroxide, I ask you if there is anything in that process that is unusual or contrary to *81 standard practice? A. Not at all. It is followed by everybody.
"Q. Ordinarily, what is the method resorted to for the purpose of lightening the color of hair where an application of a color rinse such as Kolor-treet has caused it to become a little bit darker or too dark to satisfy the patron? A. That is what you use to lighten it up."
Mrs. C. E. Greenfield, a beauty operator of many years' experience also testified on behalf of the defendant as follows:
"Q. * * * I ask you this hypothetical question based upon your actual experience, and I want your answer to be based on what you have actually observed in your practice, your actual knowledge: If in this case it is shown that on April 29, 1948, the operator applied a medium brown Kolor-treet and massaged it into the scalp smoothly for three or four minutes and then permitted it to remain, say, twenty or twenty-five minutes thereafter, and following rubbing it out, thereafter applied a shampoo consisting of Castile soap and peroxide, just state whether or not that is standard practice within your knowledge? A. It is.
"Q. Do you know of any harmful effects that could result from it, based on your actual experience in the use of Kolortreet? A. I do not."
Since the record discloses that defendant used solution of standard and approved quality, and that it was used in the customary and usual manner, and further that the defendant's employee administered the treatment in accordance with the practice generally used or which would have been used by skilled beauticians of many years experience, she has successfully rebutted this inference of negligence cast upon her by the doctrine of res ipsa loquitur.
It appears to this Court that the results which were obtained from the use of the Kolor-treet rinse might not have been just what plaintiff wished, but nevertheless she has suffered no damages or injury to her hair.
For the reasons assigned, judgment appealed from is affirmed. All costs of these proceedings to be borne by plaintiff.