311 So.2d 563 (1975)
Shirley CHAPPETTA
v.
Dr. James M. CIARAVELLA and St. Paul Fire & Marine Insurance Company.
No. 6680.
Court of Appeal of Louisiana, Fourth Circuit.
April 15, 1975.
Rehearing Denied May 15, 1975.
Writ Refused June 20, 1975.
*564 Arnold C. Jacobs, New Orleans, for plaintiff-appellee.
Lemle, Kelleher, Kohlmeyer & Matthews, H. Martin Hunley, Jr., New Orleans, for defendants-appellants.
Before SAMUEL, REDMANN and MORIAL, JJ.
MORIAL, Judge.
Defendants appeal a decision of the trial court awarding plaintiff damages of $2,550.00. Plaintiff answers the appeal and prays for an increase in the award.
Dr. Ciaravella performed a total abdominal hysterectomy on plaintiff at Hotel Dieu Hospital on February 8, 1972. In attendance were a circulating nurse, scrub nurse and an anesthetist, employees of the hospital; and an assistant surgeon, Dr. Lewis Legio.
Established procedure requires both nurses to make a count and written record of the number of sponges and laparotomy pads[1] or "lap sixes" before the commencement of the operation. At the termination *565 of the operation the doctor makes a visual and manual inspection of the operative site and then confers with both nurses as to the count of sponges and "lap sixes." Before a final closing of the outer tissue a second count is made by the nurses to ascertain if any sponges or "lap sixes" are missing. This procedure was followed in plaintiff's operation and the nurses' post-operative count which was later found to be erroneous, corresponded to the pre-operative count.
Subsequent to the operation plaintiff became nauseated and vomited for several days. On the fourth post-operative day her abdomen became distended and the plaintiff was further nauseated. A gastric (bordix) tube was placed in plaintiff through her nose to alleviate the nausea. Three days later this tube was clamped to see how the plaintiff would respond without it. This precipitated further vomiting. X-rays were taken which showed a mechanical obstruction of the bowel. On February 16, eight days after the operation, plaintiff was again surgically opened revealing a "lap six" which was removed. Subsequent to this second operation plaintiff had an uneventful recovery.
Plaintiff argues that the presence of a foreign object left or permitted to remain in a body cavity constitutes either (1) prima facie negligence or is res ipsa loquitur; and (2) if the defendant physician cannot make some affirmative showing as to his actions other than to affirm reliance upon the sponge count of the nurses, he should be cast in judgment.
Defendants contend that the trial court required Dr. Ciaravella to sustain an impossible burdenthat of explaining specifically why the "lap six" was not found by him.
Defendants argue that the standard of Meyer v. St. Paul-Mercury Indemnity Co., 225 La. 618, 73 So.2d 781 (1953) is the prevailing law and since the practices and procedures employed in Roark v. Peters, 2 La.App. 448, aff'd, 162 La. Ill, 110 So. 106 (1926) were the same as today, Roark governs. Defendants further urge the inapplicability of Grant v. Touro Infirmary, 254 La. 204, 223 So.2d 148 (1969).
The standard as stated in Meyer remains unimpeached, but when the standard of care and skill was formulated in Meyer the court said a rule similar to res ipsa loquitur applies in malpractice cases in which the defendant must show that he possessed the required skill and competence and, in the particular case, used reasonable care and diligence together with his best judgment. Subsequent to Meyer, in Grant (sponges attached to a metal holder) which is, as defendants argue, factually distinguishable from Roark (lap sixes) and the case at bar, the court, nevertheless, stated:
"The general rule, as stated in 70 C.J.S. Physicians and Surgeons § 48, p. 969, is that a surgeon's failure to remove a sponge or pad before closing an incision may be regarded as negligence per se, and some authorities hold that the surgeon cannot relieve himself from liability for injury to a patient caused by leaving sponges or pads by reliance on a custom or rule requiring the attending nurse to count the sponges or pads used and removed, and on the nurse's statement as to the count.
"Albeit there is authority to the contrary, we are convinced that the general rule is sound. * * *"
In Roark the Supreme Court examined the customary sponge counting procedure used and intimated that the following of such a customary practice would be due care as a matter of law. However, it is interesting to note that Grant fails to mention Roark. Therefore, we do not know whether the rule of Grant in effect overruled the Roark pronouncement. Nevertheless, an injury of the type here involved normally does not occur in the absence of negligence. In an untoward or unusual occurrence such as here, during the time of surgery, application of res ipsa loquitur is proper. McCann v. Baton Rouge General Hospital, 276 So.2d 259 (La.1973).
*566 Dr. Frederick F. Boyce and Dr. Robert F. Watson both stated that if Dr. Ciaravella, as he testified, made a visual and manual search of the operative site, he had followed the customary community standard of care. However, Drs. Boyce, Watson and Robert G. Miller, the plaintiff's expert, each testified that he did something more than conduct a visual and manual search of the operative site depending upon circumstances surrounding the operation. Even the defendant in Roark did considerably more than Dr. Ciaravella. Accordingly, we are unable, with any degree of certainty, to determine factually the community standard of care in a case such as here. Further, the community standard of care, if it is a visual and manual search of the operative site alone, has no relevant rational basis for its application to the facts of this case where the testimony is that the "lap six" could have been placed by the surgeon where it was found, or parastolic action in the hour long operation, or in the days following the operation could conceivably have moved the "lap six" to the upper left quadrant where it was found.
An explanation of what actually happened was within the knowledge of Dr. Ciaravella alone and could not have been within the knowledge of the plaintiff. Dr. Ciaravella in performing the operation inserted the sponges and, when the operation was over, it was his duty to remove the sponges before closing the incision. Dr. Ciaravella could not avoid this duty by the delegation of post-operative counting of the sponges to nurses and reliance thereon, or a mere showing that he made a visual and manual inspection of the operative site only.
The burden is upon the defendant physician to affirmatively establish his use of reasonable care and diligence together with his best judgment in the treatment of his patient. It follows as a corollary that the defendant is also under the burden of negativing his negligence. Dr. Ciaravella has not exculpated himself of negligence by a preponderance of the evidence.
From the facts presented negligence is more probable than not. Dr. Ciaravella showed no circumstances under which his action was reasonable nor circumstances under which a search of the area of the cavity or abdomen for a sponge would have endangered his patient. Dr. Ciaravella was negligent in the breach of his duty to his patient. LSA-R.C.C. 2315, 2316.
The district court rendered judgment for the plaintiff in the amount of $5,100.00 subject to a 50% credit in favor of the defendants because of plaintiff's compromise and settlement with the insurer of the hospital. We find no error.
Affirmed.
NOTES
[1] A laparotomy pad or "lap six" is a pad of gauze measuring six to eight inches in width and approximately 36 to 42 inches in length with a double folded four inch blue radio opaque tape attached to one end. The lap six is hand rolled or crumpled after being dipped in a saline solution. This makes it a ball of approximately three inches in diameter. It is placed in the abdomen at the beginning of the operation in order to insulate and hold the intestines away from the operative site. It remains in the abdomen through the course of the operation (as opposed to those used immediately and then discarded). It is removed preceding the suturing of the incision.